UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**MATTHEW EDWARD ALEXANDER**      *      **CIVIL ACTION NO.  15-2300**


**VERSUS**                                          *      **JUDGE ROBERT G. JAMES**


**CHRISTINE W. NIXON**                    *      **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an

unspecified  motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure [doc. # 10]

filed by defendant Christine W. Nixon.  For reasons explained below, it is recommended that the

motion be GRANTED.

## Background

Matthew Alexander filed the instant diversity action against Christine Nixon ("Nixon")

on August 28, 2015.  He alleges that on August 7, 2014, Nixon, and her husband, Ray Nixon,

falsely reported to the Ouachita Parish Sheriff and Fire Departments that Alexander intentionally

set fire to the Nixons' residence.  These and other false statements by the Nixons led to

Alexander's August 12, 2014, arrest, and his subsequent detention for 281 days through May 19,

2015.[1]  Alexander maintains that Nixon continues to utter falsehoods about him.  He also alleges

that Nixon's actions resulted in his arrest, false imprisonment, forced withdrawal from law

school, loss of friends and career prospects, public shame, and emotional distress.  His myriad

theories of recovery include defamation, false imprisonment, and intentional infliction of

---

[1] Alexander was charged with aggravated arson and two counts of attempted second
degree murder.  *See* LR3.1 Collateral Proceedings and Re-filed Cases; Compl., Exh.  These
charges remain pending against Alexander in the 4th Judicial District Court for the Parish of
Ouachita, State of Louisiana.  *Id.*

emotional distress ("IIED").  *See* Civil Cover Sheet.  He seeks $5,000,000 in damages.

On November 3, 2015, Nixon filed the instant, unspecified motion to dismiss under Rule 12.  She contends that plaintiff's claims are untimely and/or premature.  Alexander filed his opposition on November 16, 2015.  Nixon filed her reply on November 30.  Thus, briefing is complete; the matter is ripe.

## Standard of Review

Nixon does not bind her motion to any one of the itemized options available under Rule 12; rather, she leaves this procedural detail to the court's speculation.  As Nixon's motion seeks dismissal of plaintiff's claims on the twin grounds that they are untimely and/or premature, the likeliest vehicles for relief under Rule 12 are a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), or a motion for judgment on the pleadings, Rule 12(c).  Either way, the inquiry is the same.  *PHI, Inc. v. Office & Professional Employees Int.'l Union*, 2010 WL 3034712 (W. D. La. July 30, 2010) (citations omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted).[2]

In federal court, sufficiency of the pleadings is determined by federal procedure.  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (citations omitted).  The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).   To withstand a motion to dismiss, "a complaint must

---

[2]  In her reply brief, defendant referenced a police report that she purported to attach as an exhibit thereto.  (Reply Memo., pg. 2, n1).  The report does not appear in the record, however.  Therefore, the court cannot consider it, and need not convert the motion to dismiss into a motion for summary judgment.  *See* Fed.R.Civ.P. 12(d).

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark, supra*.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. (citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*.  Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  Nonetheless, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id*.

### Discussion

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938).  In diversity cases, federal courts apply state laws on limitations, including accrual, and tolling. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (applying Texas law on accrual in diversity case)..

Here, neither side contests that the substantive issues raised by defendant's motion are governed by Louisiana law.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, ___ U.S. ___, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).[3]

To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court.  *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).  In the absence of a decision by the Louisiana Supreme Court on a given issue, federal courts are compelled to make an *Erie* guess.  *In re Katrina Canal Breaches Litigation*, 495 F.3d at 206; *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 628 (5th Cir. 2000).  In so doing, the court must use its best judgment to determine

> how [the Louisiana Supreme C]ourt would resolve the issue if presented with the same case.  In making an *Erie* guess, we must employ Louisiana's civilian

---

[3]  In *Jefferson*, the Fifth Circuit's decision incorporated the underlying district court opinion, 930 F. Supp. 241 (E.D. La. May 31, 1996) (J. Vance)

4

methodology, whereby we first examine primary sources of law: the constitution,
codes, and statutes.  Jurisprudence, even when it rises to the level of
*jurisprudence constante*, is a secondary law source in Louisiana.  Thus, although
we will not disregard the decisions of Louisiana's intermediate courts unless we
are convinced that the Louisiana Supreme Court would decide otherwise, we are
not strictly bound by them.

*In re Katrina Canal Breaches Litigation*, 495 F.3d at 206 (internal citations and quotation marks
omitted).

In Louisiana, the prescriptive period  is strictly construed against prescription and in favor

of the obligation sought to be extinguished.  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

Ordinarily, the burden of proof is on the party pleading prescription.  *Lima v. Schmidt*, 595 So. 2d

624, 628 (La. 1992).  However, when it appears that the claims have prescribed on the face of the

complaint, then the plaintiff has the burden of proof to establish facts which would have the

effect of interrupting or avoiding prescription.  *Martens v. North*, 1998 WL 378137 (E.D. La.

1998); *Wimberly, supra*.

a)     Defamation

In Louisiana, defamation is a delictual action subject to a liberative prescription period of

one year that runs from the day injury or damage is sustained.  La. Civ. Code Art. 3492; *Ioppolo*

*v. Rumana*, Civ. Action No. 06-0193, 2012 WL 4960385, at *5 (M.D. La. Oct. 16, 2012), aff'd,

581 F. App'x 321 (5th Cir. 2014) (citations omitted); *Vandenweghe v. Jefferson Par.*, Civ. Action

No. 11-2128, 2012 WL 1825300, at *7 (E.D. La. May 18, 2012); *Collinson v. Tarver Land Dev.,*

*LLC*, Civ. Action No. 11-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), R&R adopted,

2012 WL 692193 (W.D. La. Mar. 2, 2012).  Damages ordinarily are sustained from the date

injury is inflicted, so long as the injury is apparent to the victim, even though the extent of

damages remains indeterminate.  *Collinston, supra*.  Furthermore, defamation is not a continuous

tort.  *Id*. (citation omitted).  Rather, each and every publication or communication to a third

person constitutes a separate cause of action.  *Id*.

Plaintiff argues that although Nixon broadcasted her initial defamatory statement on August 7, 2014, he did not "truly fe[el]" the injury until August 28, 2014, when he was indicted and imprisoned at the Ouachita Correctional Center.  According to the complaint, however, Nixon's false statements led to Alexander's imprisonment by the Ouachita Parish Sheriff's Office on *August 12, 2014*, where he remained for the next 281 days.  (Compl., ¶ 4).  Absent some exception, plaintiff's defamation claim stemming from statements made by Nixon between August 7 and August 12, 2014, began to run no later than August 12, 2014, – the date of Alexander's initial arrest as a result of those statements.  Consequently, it appears on the face of the pleadings that any defamatory statements made by Nixon prior to August 28, 2014, are time-barred, and it devolves upon plaintiff to demonstrate otherwise.  *Wimberly*, 635 So. 2d at 211 (citations omitted).

Louisiana recognizes three potential avenues to retard the running of prescription: suspension, interruption and renunciation.  *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993). Alexander contends that prescription was "tolled" or suspended during the 281 days that he was incarcerated.[4]  He further argues that prescription is suspended during the pendency of his criminal case.  The court will consider each argument, in turn.

The Louisiana Civil Code provides that prescription runs against all persons, including absent persons and incompetents, unless exception is established by legislation.  La. Civ. Code Art. 3467-3468.  Nonetheless, longstanding Louisiana jurisprudence recognizes a limited suspensive exception founded on the ancient civilian doctrine of *Contra non valentem agere*

---

[4] "A period of suspension is not counted toward accrual of prescription.  Prescription commences to run again upon the termination of the period of suspension."  La. Civ. Code Art. 3472.

*nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his

cause of action when it accrues."  *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319,

1321 (La. 1979) (citations omitted).  Typically,

> the doctrine of *contra non valentem* suspends prescription where the
> circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers
> from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the
> proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor
> from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the
> plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly, supra*.

Alexander's argument that his pretrial detention suspended the running of prescription

most closely tracks *contra non valentem's* second and third categories.  *See e.g., Armstrong v.

Serpas*, Civ. Action No. 15-808, 2015 WL 5061284, at *3-4 (E.D. La. Aug. 26, 2015).

Specifically, he emphasizes that while in prison, he did not have access to a law library and no

more than limited access to a computer through an inmate "helper."  Alexander posits that

because the inmate "helper" worked for the Ouachita Correctional Center, the inmate was, in

effect, a government agent, to whom Alexander would have had to disclose his legal research

queries, which then could have been used against him at his criminal trial.

*Contra non valentem's* third exception, however, is limited to circumstances where the

defendant *herself* prevented plaintiff from filing suit.  *Armstrong, supra* (citations omitted).

Although Nixon's statements arguably played a role in Alexander's pretrial detention, Nixon was

not directly responsible for any alleged difficulties that Alexander experienced in accessing legal

materials while detained.  *See Armstrong, supra* (arresting officer not responsible for actions of prison officials).

Furthermore, the Fifth Circuit has recognized that *contra non valentem* does not suspend prescription during a plaintiff's confinement.  *McGuire v. Larpenter*, 592 F. App'x 272, 275 (5th Cir. 2014) (citing *Jackson v. Jefferson Par. Clerk of Court*, 981 So. 2d 156, 161 (La. App. 5ᵗʰ Cir.), *writ denied*,  993 So. 2d 219 (La. 2008)); *see also Stephens v. Shimpf*, 312 F. App'x 676, 677 (5th Cir. 2009) (citing *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir.1977)).

The court also notes that plaintiff's complaint is but two pages long (excluding the caption), with no legal citations.  It does not reflect the need for any considerable research, given that it simply recites the circumstances of plaintiff's plight, especially, where, as here, plaintiff alleges that he was a law student.  *See* Compl., ¶ 5.  Moreover, the court does not credit plaintiff's professed inability to research his case while in prison because of fear of disclosing his trial strategy in his criminal case.  Although plaintiff's criminal case still remains pending, Alexander now states that he is willing to dispense with his Fifth Amendment rights so he can move forward with *this* case.  (Pl. Opp. Memo., pg. 9).  Plaintiff's inconsistency on this front undermines the vitality of his earlier concerns.  In the end, plaintiff has not provided any cognizable ground for the suspension of prescription during his 281 day detention.  *See White v. Gusman*, 347 F. App'x 66, 68 (5th Cir. 2009) (because plaintiff did not identify any material fact that was concealed from him, *contra non valentem* provides no relief from prescription).

Plaintiff's second basis for suspension fares better than his first.  In *Lyons v. Knight*, the Louisiana Third Circuit Court of Appeal held that prescription on a defamation claim, premised on statements made by individuals to the police, was suspended during the pendency of plaintiff's criminal trial based on the same police reports.  *Lyons v. Knight*, 65 So. 3d 257, 264

(La. App. 3d Cir.), *writ denied*,  74 So. 3d 215 (La. 2011).[5]

The holding in *Lyons* is derived from the rule that "when a suit for damages for libel is based upon allegations contained in another suit, the second suit must await the termination of the action wherein the defamatory averments are made." *Manuel v. Deshotels*, 160 La. 652, 654, 107 So. 478, 479 (La. 1926).[6]  Over one-hundred years ago, the Louisiana Supreme Court explained that,

> [a]s the law makes no distinction as to the manner in which the injurious words, in case of libel, are published, it might be argued that where, as in this case, they are used in pleadings filed in court, the prescription of the action for damages runs from the date of the filing. If, however, the court in which the pleadings have been filed eventually holds that the words are pertinent and material to the issue to be decided, or were used with probable cause, we have the same situation as when an

---

[5]  The *Lyons* court distinguished *Doughty v. Cummings*, a Louisiana second circuit decision that declined to suspend prescription during the prosecution of a criminal proceeding because the alleged defamatory statements were not made in the judicial proceeding itself.  *Id.* (citing *Doughty v. Cummings*, 28 So. 3d 580, 584 La. App. 2d Cir. 2009), *writ denied*, 31 So. 3d 394 (La. 2010)).  The third circuit seemingly distinguished *Doughty* on the grounds that the defamatory statements originally were made to an insurance adjuster, rather than directly to law enforcement as in *Lyons*.  *See Lyons, supra*.  Regardless, however, the language in *Doughty* constitutes dictum because it is apparent that the extra-judicial defamatory statements were made more than one year before the criminal proceedings commenced, i.e., prescription already had run, and therefore, could not be suspended.  *See Doughty, supra* (statements were made in early 2003, but plaintiff not indicted until mid-2006).

[6]  In another case, the Louisiana Supreme Court noted, with apparent approval, other "decisions in which unfounded prosecutions and untrue affidavits were made, and arrests resorted to, the court generally held that the parties complaining should before suing for damages insist upon the trial of the charge in order to have it determined that it was untrue."  *Lebovitch v. Joseph Levy & Bros. Co.*, 128 La. 518, 533, 54 So. 978, 983 (La. 1911).
At least one Louisiana's intermediate court has limited the suspension of prescription for defamatory statements made during judicial proceedings solely to defamatory statements made by parties to the lawsuit.  *See e.g., Killian v. Irving*, 2010 WL 1253378 (La. App. 1st Cir. Apr. 1, 2010) (unpubl.).  However, the only requirement that the supreme court has imposed for suspension is that the person injured by the libel (Alexander in this case) be a party to the litigation where the libel occurred.  *Union Serv. & Maint. Co. v. Powell*, 393 So. 2d 94, 100 (La. 1980).  Needless to say, Alexander is a party to the pending criminal proceeding against him.

alleged malicious prosecution is sustained-the decision relates back to the date at which the words were used, and, in effect, holds that they were lawfully used, and that the damage resulting therefrom is damnum absque injuria, from which it follows that, during the interval, the question, whether the words are, in legal contemplation, injurious, is held in abeyance, and it is only when, by the judgment in the case in which the matter can be determined, it is ascertained that the words are injurious, that the prescription of the action for damages begins to run, since that prescription relates to actions for injurious words."

*Carnes v. Atkins Bros. Co.*, 123 La. 26, 33, 48 So. 572, 574 (La. 1909) (internal quotation marks omitted).[7]

Neither the parties nor this court has identified an instance where the Louisiana Supreme Court unequivocally has extended the foregoing principle to alleged defamatory statements that preceded and directly precipitated a criminal prosecution.[8] If confronted with the issue, however, the undersigned is persuaded that the Louisiana Supreme Court would hold that prescription is suspended because the same practical considerations that support suspension of prescription for defamatory statements made during litigation, also support suspension of prescription for defamatory statements that spark a criminal prosecution.

The alternative is unpalatable: an individual maliciously accused of, and prosecuted for alleged criminal wrongdoing would have to file a civil case for defamation within one year of the accusation – notwithstanding the existence of the pending criminal case. The civil court

_____

[7] In *Robinson Mercantile Co. v. Freeman*, the Louisiana First Circuit Court of Appeal acknowledged the argument that a cause and right of action for libel arises as soon as the libelous matter is published because that is when the damage is sustained – *not* when the statements are proven false. *Robinson Mercantile Co. v. Freeman*, 172 So. 797, 799 (La. App. 1st Cir. 1937). Nevertheless, the court stated that it was bound to follow the Louisiana Supreme Court's determination that an action for libel derived from statements made in a suit must await the outcome of that litigation. *Id.*

[8] There is no shortage of case law where alleged arsonists have sued their accusers for defamation. *See e.g., Dearmond v. St. Amant*, 40 La. Ann. 374, 4 So. 72 (La. 1888) (noting that if plaintiff is innocent of the heinous charge of arson, as the law presumes him to be, then he has undoubtedly suffered a great wrong); *Murphy v. Redler*, 16 La. Ann. 1 (La. 1861); and *Wolf v. Royal Ins. Co. of Liverpool, Eng.*, 130 La. 679, 682, 58 So. 507, 508 (La. 1912).

then would face the untenable prospect of deciding the veracity of the accusations potentially before the same issue is determined in the criminal proceeding. Furthermore, if the defendant in a pending criminal case were required to file a civil action for defamation to prevent prescription running on his claim, the existence of the civil suit could have a chilling effect on his accusers.[9]

Accordingly, the court finds that Alexander's defamation claim against his accuser is suspended, and remains un-perfected or premature throughout the pendency of the timely filed criminal proceeding directly arising out of the defamatory words. *See Calvert v. Simon*, 311 So. 2d 13, 17 (La. App. 2nd Cir. 1975) (out-of-court statements made prior to litigation were related to allegations in suit, and thus, an action for defamation as to out-of, and in-court statements was premature until the litigation was resolved).[10]

The court further observes that, according to plaintiff's representation in his opposition brief, he was indicted on August 28, 2014. (Pl. Opp. Memo., pg. 3). Assuming this is true,[11] the

---

[9] Although a stay of the civil proceedings pending resolution of the criminal case is a possible alternative, the Louisiana Supreme Court did not adopt this practice for defamatory words made during litigation. Moreover, plaintiff does not want to stay this case; he wants to proceed with the hope of preempting his criminal case.

[10] Insofar as plaintiff maintains that, on other unknown occasions after August 28, 2014, Nixon repeated her defamatory statements to the prosecuting authorities, it is manifest that his claim is unripe or premature. First, there is no indication that plaintiff actually is aware of any additional statements made by Nixon or that they are reasonably knowable by him. *See* Pl. Opp. Memo., pg. 2 and *Wimberly, supra*. Second, as discussed previously, Louisiana recognizes a qualified privilege that suspends prescription from running on a defamation claim for statements made in litigation. *Lemke v. Keiser & Auzenne, L.L.C.*, 922 So. 2d 690, 692-93 (La. App. 3d Cir. 2006). Plaintiff should note, however, that testimony given by a non-litigant witness in a judicial proceeding is accorded an absolute privilege. *Knapper v. Connick*, 681 So. 2d 944, 946 (La. 1996) (citations omitted).

[11] The Fifth Circuit has recognized that a court should construe a pro se response to a dispositive motion as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a). *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (response to summary judgment motion) (citations omitted).

indictment arguably serves as republication of Nixon's prior alleged defamatory statements, for which Nixon may be liable.[12]

b)     Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress ("IIED") is a delictual claim subject to a one year prescriptive period. *Ioppolo, supra* (citations omitted). Thus, insofar as plaintiff's IIED claim is premised on Nixon's statements that pre-date August 28, 2014, they are prescribed. In addition, although Nixon may be liable in defamation for the republication of her prior statements by the authorities in the indictment handed down on August 28, 2014, *see* discussion, *supra*, plaintiff has not adduced any authority for the proposition that the same rule applies to his IIED claim. In fact, at least one Louisiana intermediate court has found no legal basis for suspending the running of prescription on an IIED claim during the pendency of a related criminal proceeding. *Waguespack*, 877 So. 2d at 1093-94.[13]

c)     Wrongful Arrest/False Imprisonment

Defendant contests the sufficiency of plaintiff's claim(s) for wrongful arrest/false

_____

[12] The original source of defamatory words may be held liable for republication of the words by another when "the republication is the natural and probable consequence of the defendant's act." *Ioppolo, supra* (citation omitted). An indictment following a report of criminal activity would appear to meet these criteria. *Id.*
     The instant suit was timely filed within one year of August 28, 2014. *Sharp v. Louisiana Stadium Expo Dist.*,146 So. 3d 692, 693-94 (La. App. 4th Cir.), *writ denied*, 152 So. 3d 156 (La. 2014) (prescription does not expire until the end of the day of the one year anniversary after prescription began to run).

[13] Moreover, other jurisdictions do not even recognize an IIED claim when it is based on the same allegations as a companion defamation claim. *Willi v. Am. Airlines Inc.*, 288 F. App'x 126, 127 (5th Cir. 2008) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)  (discussing Texas law).

12

imprisonment.[14]  "Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority."  *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 689-90 (La. 2006) (citations omitted).  The tort is comprised of two essential elements: "(1) detention of the person; and (2) the unlawfulness of the detention."  *Id*.

Here, plaintiff does not allege that Nixon herself physically restrained him.  He argues solely that Nixon's false report ultimately resulted in his arrest and detention by others, i.e., the authorities.  These facts do not suffice to state a claim for false arrest or imprisonment against Nixon.  *See Kennedy, supra; Waguespack, supra*.[15]

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss [doc. # 10] filed by defendant

---

[14]  Plaintiff contends that his false imprisonment claim is subject to a two year prescriptive period as a crime of violence because "it arose as a result of arson perpetrated by Defendant and her husband."  (Pl. Opp. Memo., pg. 5; La. Civil Code Art. 3493.10).  Defendant, however, does not seek dismissal of plaintiff's claim on the basis that it is time-barred.  Moreover, it is the actual claim at issue in *this* suit which must constitute a crime of violence – not some other crime related to the instant action.  *See Johnson v. Littleton*, 37 So. 3d 542, 546 (La. App. 2d Cir. 2010) (declining to apply Article 3493.10 to a claim for negligent hiring and training against employer stemming from assault and battery committed by employee).  In addition, defamation, wrongful arrest/false imprisonment, and IIED are not crimes of violence listed in Louisiana Revised Statute § 14:2(B), and thus not subject to Article's 3493.10's extended prescriptive period.  *See Boland v. Kleinpeter*, 820 So. 2d 489, 493 (La. 2002) (consulting § 14:2 to discern crimes of violence contemplated by Article 3493.10); *Thibodeaux v. Normand*, Civ. Action No. 13-5903, 2015 WL 3772569, at *3, n.1 (E.D. La. June 17, 2015) (false imprisonment does not satisfy the definition of a "crime of violence" under La. R.S. § 14:2(B) for purposes of obtaining the two-year statute of limitations available under Article 3493.10).

[15]  However, if plaintiff is able to prove that his arrest and detention were causally related to defendant's alleged false police report, then he may use his period of confinement as a component of damages in his defamation claim.

Christine W. Nixon be GRANTED, and that plaintiff's state law defamation claim be DISMISSED, WITHOUT PREJUDICE as premature, but that his state law tort claims for intentional infliction of emotional distress and false arrest/wrongful imprisonment be DISMISSED WITH PREJUDICE.  Fed.R.Civ.P. 12(b)(6) or (c).[16]

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 14th day of December 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[16]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movant, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).

14